CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 06, 2025

LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JEFFREY ALLEN TURNER,               )
                                    )
        Plaintiff,                  )
                                    )    Civil Action No. 7:23-cv-00371
v.                                  )
                                    )    By: Elizabeth K. Dillon
TOWN OF NARROWS,                    )        Chief United States District Judge
                                    )
        Defendant.                  )

**MEMORANDUM OPINION**

In this employment lawsuit, plaintiff Jeffrey Turner (plaintiff or Turner) asserts a sole claim of discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, against the defendant, Town of Narrows (defendant or the Town).  Before the court is the Town's motion for summary judgment, which is fully briefed, was argued before the court, and is ripe for resolution.  For the reasons set forth below, the court will grant the Town's motion for summary judgment.

I.  BACKGROUND[1]

The Town of Narrows, through the Narrows Recreational Department, employed Turner as a part-time sports official.  Turner, in his part-time role, officiated various sporting events such as high school basketball and baseball games.

In July 2021, the Town's Parks and Recreation Director position opened after the current director decided to step down.  The posting announced, among other things, the position type, the essential job duties, and to where applications could be delivered.  Additionally, and most pertinent to Turner's allegation, the posting set forth a few "[m]inimum requirements" sought

---

[1] Additional facts are discussed in context.  *See infra* Section III.C.

from potential applicants.  The Town received ten applications after the posting.  Two Town officials—Susan Kidd and Dakota Shrader—reviewed all ten applications for the position and selected five to interview.[2]

Turner, who was sixty-one years old at the time he applied, was one of the five to receive an interview.  At least three of the five selected for an initial interview—Turner, his older brother Clyde Turner, and Jeff Spicer—were 40 years of age or older.[3]  Of the five applicants who were not selected for a first-round interview, it appears that four of those individuals were under forty.

The same panel of interviewers conducted first-round and second-round interviews.  In addition to Kidd and Shrader, the panel included John Davis (the Town Public Works Director, a past Mayor and Town Council member), and Sara Bowles (a Town Council member on the Parks and Recreation Committee).  All but Shrader were over forty years old.

After a first-round interview with each of the five applicants, interviewers selected two applicants—Spicer and Landon Patteson—for a second interview.  Turner was not selected for a second interview.  Spicer[4] was eventually deemed the interview panel's second choice.  The panel collectively selected Patteson as its choice following the second interview and made that recommendation to the Town Council, who hired Patteson.

## II.  OVERVIEW OF PARTIES' ARGUMENTS

Turner's complaint alleges discrimination in violation of the Age Discrimination in Employment Act.  (Compl. ¶ 28 (citing 29 U.S.C. §§ 621–634; 28 U.S.C. § 1331; 28 U.S.C.

---

[2]  Susan Kidd held the title of "Director of Strategic Development," and has elsewhere been described as the chief administrative official for the Town.  Dakota Shrader was the outgoing Director and reported to Kidd.

[3]  The application did not ask for a date of birth, but it did ask for the year each applicant graduated high school.

[4]  The Town suggests Spicer was 40 (Mem. Supp. Mot. Summ. J. 3, Dkt. No. 17), but he might have been 41 years old.  Assuming Spicer was 18 years old at the time he graduated high school in 1998, he was likely 41 at the time of the interviews in June 2021.

§ 1343(a)(4)).)  Turner claims that he "was the most qualified applicant for the Director position but was not selected for the position due to his age and a bias against an older worker filling the position."  (*Id.* ¶ 20.)  In its answer, the Town denies that it discriminated against Turner. (Answer at 3, Dkt. No. 5.)

Likewise, in its motion for summary judgment (Dkt. No. 16), the Town asserts that age played no role in its decision not to hire Turner.  (Def.'s Mem. Supp. Mot. Summ. J. (Def.'s Br.) 1, Dkt. No. 17.)  The Town argues it selected Patteson because he performed quite well in his interview, whereas Turner did not.  (*Id.* at 1, 5.)  Additionally, the Town points to the facts that three of the four interviewers were over 40 (*id.* at 1), and that the Town's second ranked option after two rounds of interviewing—Spicer—was over 40 and within the ADEA's protected class (*Id.* at 8.)

While not conceding that Turner has shown a prima facie case, the Town focuses its summary judgment arguments on its contention that it has articulated a legitimate, non-discriminatory reason for not selecting Turner and that Turner has not presented any evidence of pretext.  (*See generally id.*)  Specifically, it argues that Patteson performed substantially better in the first-round interview and that the interview panel was unimpressed with some of Turner's responses or statements.

In his response in opposition, Turner argues that he has established a prima facie case by providing sufficient evidence of the four elements.  (*See generally* Pl.'s Mem. Supp. Mot. Summ. J. (Pl.'s Br.), Dkt. No. 18.)  He emphasizes that because Patteson failed to meet the minimum requirements listed on the job posting, he should have never received an interview.  This is evidence, says Turner, that the legitimate, non-discriminatory reason put forward by the interview panel is pretextual.  (Pl.'s Br. 4.)  Turner argues that while he met the minimum

requirements, Patteson did not, and therefore Patteson was unqualified for the job. (*Id.* at 12.) In short, he contends that because the Town hired a "substantially younger replacement [who] was unqualified for the position," (*id.* at 18), its proffered non-discriminatory reason falls flat. Turner believes this is evidence from which a reasonable jury could conclude that the real reason Turner was not hired was age discrimination.

In its reply, the Town asserts that Turner has not demonstrated a prima facie case of discrimination, has failed to address the Town's legitimate, non-discriminatory reason, and has not shown evidence of pretext. (*See generally* Def.'s Reply, Dkt. No. 20.)

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[5] In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving

---

[5] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted.

party must produce "significantly probative" evidence from which a reasonable jury could return

a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

**B.  ADEA Legal Framework**

"The ADEA prohibits employers from refusing to hire, discharging, or otherwise

discriminating against any person who is at least 40 years of age 'because of' the person's age."

*Cockman v. Circle K Stores Inc.*, 807 F. App'x 268 (4th Cir. 2020) (quoting *EEOC v. Balt. Cty.*,

747 F.3d 267, 272 (4th Cir. 2014) (citing 29 U.S.C. §§ 623(a)(1), 631(a))).  "To demonstrate a

claim under the ADEA, [a plaintiff] either ha[s] to provide direct evidence of discrimination or

demonstrate a prima facie case of discrimination."  *Id.* (citing *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792, 801–02 (1973)); *Mereish v. Walker*, 359 F.3d 330, 333–35 (4th Cir. 2004)

(applying *McDonnell Douglas* framework to ADEA claims), *abrogated in part on other grounds

by Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177–80 (2009).

Turner does not provide direct evidence of age discrimination.  Instead, he proceeds

under the *McDonnell Douglas* burden-shifting framework.  Operating under that scheme:

> [O]nce the plaintiff proves a prima facie case of discrimination, the
> burden of producing a legitimate explanation shifts to the defendant.
> If the defendant articulates a legitimate nondiscriminatory
> explanation which, if believed by the trier of fact, would support the
> conclusion that discrimination was not a determining factor in the
> adverse employment decision, the presumption created by the prima
> facie case drops from the case, and the plaintiff bears the ultimate
> burden to prove that the defendant intentionally discriminated
> against the plaintiff.

*Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1314–15 (4th Cir. 1993).

The standard for proving age discrimination is "high, in that a plaintiff must prove [by a

preponderance of the evidence] the discrimination was the but-for cause of his failure to be

hired."  *Buckner v. Lynchburg Redev. & Hous. Auth.*, 262 F. Supp. 3d 373, 377 (W.D. Va. 2017).

"[T]hat causal relationship exists if the defendant's discriminatory animus was a 'necessary logical condition' for the adverse action taken and that the defendant did not act 'because' of some other, legitimate motivation." *Id.*; *see also Palmer v. Liberty Univ.*, 72 F.4th 52, 63 (4th Cir. 2023) ("An employee . . . must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the but-for cause of the challenged employer decision."). However, for an event to be the "but-for-cause," it need not be the sole cause of the adverse employment action. *Id.* Instead, the plaintiff must prove "that the employe *would not have* [taken the adverse employment action] in the absence of age discrimination." *Bandy v. City of Salem*, 59 F.4th 705, 710 (4th Cir. 2023). *See also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) ("[A]n employee cannot prevail . . . by showing that age was one of multiple motives for an employer's [adverse employment] decision; the employee must prove that the employer would not have fired her in the absence of age discrimination.").

A defendant can obtain summary judgment by demonstrating "that the plaintiff's proffered evidence fails to establish a prima facie case, or, if it does, the defendant can present evidence that provides a legitimate nondiscriminatory explanation about which the plaintiff does not create a factual dispute." *Mitchell*, 12 F.3d at 1316. The Town claims it is entitled to summary judgment on both bases but focuses its arguments on its proffered legitimate nondiscriminatory reason for not hiring Turner. The court next (1) discusses briefly whether Turner has presented evidence sufficient to establish a prima facie case, and then (2) examines whether he has shown that there is a genuine dispute of material fact about the Town's proffered explanation for the decision it made.

## C. Discrimination in Violation of ADEA

### 1. Prima facie case

To establish a prime facie case of a discriminatory failure to hire, a plaintiff must

demonstrate that:

> (1) [H]e was a member of a protected class, *i.e.*, that he was at least
> 40 years old; (2) his employer had an open position for which he
> applied and was qualified; (3) he was rejected despite his
> qualifications; and (4) the position remained open or was filled by a
> similarly qualified applicant who was substantially younger than the
> plaintiff, whether within or outside the class protected by the
> ADEA.[6]

*Buckner*, 262 F. Supp. 3d at 378.  Proving a prima facie case using circumstantial evidence

requires a plaintiff to "prove a set of facts which would enable the fact-finder to conclude with

reasonable probability that *in absence of any further explanation*, the adverse employment action

was the product of age discrimination."  *Mitchell*, 12 F.3d at 1315 (emphasis in original).

Turner argues that he has met the elements required to demonstrate a prime facie case of

age discrimination.  First, it is undisputed that Turner was in the protected age class at the time

the Town did not hire him.  Next, he points to the Town's responses to requests for admission as

evidence that the Town conceded Turner's work as a part-time referee was performed "at a

satisfactory level."  (Pl.'s Br. 3.)  Last, Turner points to the fact that the Town hired a younger

employee who is not a member of the protected class.

The Town, on the other hand, does not concede that Turner has presented sufficient

evidence to make a prima facie case of age discrimination.  Pointing to *Chapins*, the Town argues

---

[6] In discussing the prima facie case of age discrimination, the Town refers to a "failure-to-hire" theory (Def.'s Br. 13 n.14), while Turner appears to treat the claim as a failure to promote (Pl.'s Br. 2–3).  In either case, the plaintiff must show that: (1) he is a member of the protected class; (2) he was not hired (or promoted); (3) he was qualified for the position (or was performing at a level that met the employer's legitimate expectations); and (4) a member outside the protected class was hired (or the position remained open).  The court utilizes the failure-to-hire framework herein, but the result would be the same under either.

that Turner failed to meet his burden because Turner was not similarly situated to Patteson based on their respective interview performances.  (Def.'s Br. 13 n.14 (citing *Chapins v. Nw. Cmty. Servs. Bd.*, 243 F. Supp. 3d 739 (W.D. Va. 2017)).)  Instead, the Town argues that Patteson was more qualified than Turner.  (*Id.*)

Because the court rules in the Town's favor, for purposes of its summary judgment ruling the court will assume without deciding that Turner has presented sufficient evidence to establish a prima facie case, and it will proceed to address the Town's proffered legitimate, non-discriminatory reasons for hiring a younger candidate.

### 2.  Non-discriminatory reason for the Town's hiring decision

#### a.  Legitimate, non-discriminatory reason of employer

Once a plaintiff has made a prima facie showing of age discrimination, the analysis shifts to examining the proffered legitimate, non-discriminatory explanation put forward by the employer.  "If [a] plaintiff makes a prima facie showing [of discrimination], then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action."  *Cockman*, 807 F. App'x at 269 (citing *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002)).

The Town asserts that age played no role in the decision to hire Patteson, that Turner's claim is based on his own unsubstantiated beliefs concerning his qualifications relative to the other candidates, and that Patteson was selected for the role because "he stood out among the applicants through the interview process."  (Def.'s Br. 1.)

At a minimum, the evidence supports the Town's offered legitimate reason that Patteson performed more favorably in the eyes of the interviewers than both Turner and the other interviewees.  As discussed *supra*, five candidates were selected for a first-round interview from

8

a pool of ten applications.  From there, two candidates were asked to return for a second and final interview.

Regarding Turner's interview, across the board, all four interview panelists expressed concerns regarding at least some of Turner's answers.  Bowles stated Turner "was very ill prepared . . . When asked how he would handle a situation, a conflict, it was 'how I always do.' And, you know, that certainly was not the answer that we would be looking for or I was looking for."  (Bowles Dep. 15–16, Ex. 9 to Def.'s Br.)  Bowles added that "there was no expounding on anything, it did not appear as he had thought about any questions, any new ideas or thought about things he may need to work on . . . ."  (*Id.* at 17.)  Bowles further noted that although the position entails both a recreation and parks component, Turner only discussed recreation and failed to address the parks aspect of the job.  (*Id.*)

Another interviewer, John Davis, had been good friends with Turner for years.  (Davis Dep. 15, Ex. 8 to Def.'s Br.)  He nonetheless "fe[lt] like Mr. Turner put in an application and showed up for his interview and was not prepared for it."  (*Id.* at 20.)  Again, on the topic of a hypothetical disgruntled parent, Davis noted Turner answered "[H]ow I handle it now."  (*Id.* at 14).  Davis added, "Now, he (Turner) didn't elaborate on it, but I've known Jeff for a long time."  (*Id.*)

Dakota Shrader was the third interviewer and the then-departing director.  Shrader had known Turner for several years and had even asked Turner to help with officiating sports events when Shrader first started as the Parks and Recreation Director (Shrader Dep. 7, Ex. 1 to Def.'s Br.)  Like the other interviewers, Shrader assessed that Turner's interview performance left room for improvement.  In fact, Shrader had been the interviewer who asked each interviewee, including Turner, how that interviewee would handle a fraught situation with a parent.  (*Id.* at

9

23.)  Shrader believed that Turner's response that "sometimes you have to get into [it] with the parent" was not the best answer.  (*Id.* at 23–24.)

Susan Kidd was the fourth interviewer.  Kidd thought that Turner, in his interview, appeared unenthusiastic and largely focused on the recreational aspects of the job while neglecting to discuss the parks.  (Kidd Dep. 31, Ex. 2 to Def.'s Br.)  Kidd viewed one of Turner's first statements that he was only looking for a three-to-five year job as further evidence of a lack of enthusiasm on his part.[7]  (*Id.* at 31–32.)

In comparison, all interviewers appeared impressed by Landon Patteson's performance. Bowles stated that "Landon was very enthusiastic, he was very enthusiastic during the interview, he brought ideas. . . . [S]ome fundraising ideas. . . . He mentioned that this had been kind of like his dream job, something that he wanted to do, and that was reflected in the interview."  (Bowles Dep. 18–19.)  Similarly, Davis stated that he thought Patteson was the most qualified interviewee, "He had the best interview.  He seemed to be more prepared.  He had a lot of good ideas about the direction he'd like to see our parks go, not just the recreation department . . . . [H]e had really . . . thought about this position, didn't just put in an application . . . ."  (Davis Dep. 19–20.)  Additionally, "Mr. Patteson stated that he wanted it to be a career job for him.  It was a dream job for him . . . ."  (*Id.* at 15.)  Kidd likewise recalled that "He [Patteson] had done a lot of research into the job and exactly what it entailed and had written plans of things that he would like to see expanded into that position. . . . And, again, he told us this was his dream job . .

---

[7]  Turner disputes this statement.  Interviewers Davis, Kidd, and Bowles specifically recalled Turner saying he was looking to work three to five years.  (David Dep. 15; Kidd Dep. 32; Bowles Dep. 16.)  Turner, comparatively, testified that "[I]f my memory serves me correct . . . I told them that I got about five to seven years till I can draw my Social Security."  (Turner Dep. 46–47, Dkt. No. 18-4.)  Accepting Turner's version of events as true, as the court must on summary judgment, may undercut one of the reasons some of the interviewers did not believe he should advance to the second-round interview.  Nevertheless, it does not undercut the totality of the stated reasons as to the interviewers' preference for Patteson, nor does it affect their concern with other answers from Turner.  It is thus not a "material fact" precluding summary judgment.  *See Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir .2022) ("A fact is material if it might affect the outcome of the suit under the governing law.").

. .” (Kidd Dep. 33.)   Lastly, Shrader: “From my professional opinion that I had sat in on many

interview committees . . . Mr. Patteson answered the questions and conducted himself in the

interview and if I had to select a candidate Landon would have been the candidate I would have

selected at that time.”  (Shrader Dep. 12.)

　　　Here, the Town has rebuffed the notion that discriminatory animus was a “necessary

logical condition” for its action.  *Buckner*, 262 F. Supp. 3d at 377.  Each interviewer for the

Town thought Patteson performed better than his competitors, and that Turner appeared less

enthusiastic and provided certain concerning answers.  Accordingly, the Town “has articulated a

legitimate reason for its failure to hire Plaintiff for purposes of the *McDonell Douglas*

framework, and thus shifts the burden to Plaintiff to prove that those reasons were pretextual.”

*Buckner*, *262* F. Supp. 3d at 379.

　　　**b.  Pretext**

　　　Once a legitimate explanation is given by the employer, a plaintiff “must demonstrate that

the employer’s proffered reason was false, and that age discrimination was the real reason for the

adverse employment action.”  *Id.*  “[I]f the defendant can produce legitimate, non-discriminatory

reasons, then the plaintiff must show that those reasons were pretextual only.”  *Ullman v. Rector*

*& Visitors of Univ. of Va.*, 996 F. Supp. 557, 561 (W.D. Va. 1998).  “To do so, the plaintiff must

‘show that the employer’s proffered explanation is unworthy of credence, thus supporting an

inference of discrimination, or offer other forms of circumstantial evidence sufficiently probative

of intentional discrimination.’”  *Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 258 (4th Cir. 2006)

(quoting *Dugan*, 293 F.3d at 721).  “[A] plaintiff may show that an employer’s proffered

nondiscriminatory reasons for the [adverse action] are inconsistent over time, false, or based on

mistakes of fact.”  *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019).  “Once

the plaintiff offers such circumstantial evidence, the case must be decided by a trier of fact and cannot be resolved on summary judgment." *Id.*

Turner first argues that the legitimate, non-discriminatory reason put forward by the Town is pretext because Patteson failed to meet the minimum requirements listed on the job posting. (Pl.'s Br. 4.) Turner asserts that while he met the minimum requirements, Patteson did not, and therefore the Town selected an unqualified candidate for the job over a qualified candidate in the protected class. (*Id.* at 12.)

As an initial matter, one could argue that neither Turner nor Patteson met all the minimum requirements listed in the job posting. For example, neither had the "preferred" bachelor's degree. Additionally, while Patteson indeed did not have the four years' experience in Parks and Recreation or a related field, neither is it clear that Turner's officiating experience was the type of Parks and Recreation experience envisioned by the job description. Officiating is certainly a different type of work than the duties the Director position entailed, as evidenced by the questions asked during the interview and the description of duties in the posting. Also, officiating is limited to the recreation side of the department.

The record also demonstrates that at least some of the interviewers were unaware of the "minimum qualifications" from the posting. When asked "Are you familiar with whether or not there were any . . . minimum requirements for this job?" Bowles answered that she was not familiar and could not say for certain without looking at the posting. (Bowles Dep. 19.) Similarly, Shrader stated that he was unaware the position had listed minimum qualifications. (Shrader Dep. 12.) He further said, "I didn't have a copy of qualification standard or interview thing, I was just sitting there asking questions in regards to my experience on the job." (*Id.* at 13.)

Kidd and Davis were at least aware of the minimum qualifications noted in the job posting, but none of the interviewers appeared to keep those in mind or discuss the significance of those qualifications as it pertained to any of the candidates once interviews had commenced. Davis, for example, thought none of the candidates interviewed met the minimum qualifications or had the equivalent of four years of experience in parks and recreation. (Davis Dep. 19.) His determination that Patteson was most qualified was based on the interviews. (*Id.*)

In any event, even if a reasonable jury could find that Turner met the required qualifications and Patteson did not, that does not call into question the reason given by the Town, and it alone is insufficient for the jury to find that the real reason for the decision was discrimination. On this point, a decision from another judge of this court is instructive.[8]  *See Chapins*, 243 F. Supp. 3d 739. In *Chapins*, the court granted the defendant employer's motion for summary judgment on numerous claims, including an ADEA failure to rehire claim. *Id.* at 742. While the *Chapins* court found that the plaintiff had demonstrated her prima facie case, it also found that the successful candidate's higher score on the interview evaluation forms served as a legitimate justification for the employer's decision to hire a different and younger candidate. *Id.* at 751. In those circumstances, Chapins argued that the employer's decision was pretextual because the scoring system was subjective, the successful applicant was "noticeably younger," and Chapins had more relevant management experience. *Id.* at 752.

The court found that Chapins "present[ed] little" to suggest that the given reason was false, and "nothing [to] show the decision was made on the impermissible basis of age." *Id.* at 754. Like the plaintiff in *Chapins*, Turner has offered little (or nothing) to suggest the

---

[8]  Turner cites to *Chapins* as support for his argument that the Town's proffered legitimate reason is false. He notes that the panel interview in *Chapins* used an objective scoring matrix, unlike the subjective impressions here, and he argues that, unlike the *Chapins* plaintiff, he has presented evidence that the successful candidate was not qualified. A careful review of that decision, however, reflects that it helps the Town, not Turner.

13

interviewers' given reason was false or that they made their decision because of his age.  Turner posits the Town's legitimate reason is false because he was "qualified" and Patteson was not, as well as that he answered the question about the length of time he would serve in the job as being five to seven years, not three to five.

Both of Turner's assertions are addressed at some length above.  Accepting as true that Turner stated he would want to serve in the role for five to seven years does not effectively negate the other reasons given by the interview panelists for selecting Patteson as invalid.  Moreover, even assuming a difference in qualifications based on the written posting (and again, assuming it is in Turner's favor), a reasonable jury could not conclude that age was a but-for factor behind the panel's decision.

Turner relies on another case, *Phillips*,[9] to argue that he need not present evidence to rebut the Town's assertion that Patterson's interview was superior because it is enough, on its own, that—at least according to Turner—he was qualified and Patteson was not.  In *Phillips*, two emails from employees of the defendant led the court to find sufficient facts existed to go to a jury.  The first email suggested that the employer purposefully was setting illegitimate expectations for the plaintiff's work performance that were intended to "trip up" the plaintiff.  *Phillips*, 2012 WL 3762448 at *4.  The second email referenced the plaintiff's performance review and stated that human resources needed to "scrub it to ensure it is appropriate."  (*Id.*)  Construing such evidence in the plaintiff's favor, the court concluded it raised a question as to the prima facie case and, importantly, noted that "[t]he *very same evidence* calls into question" the employer's nondiscriminatory explanation.  *Id.* (emphasis added).  From this, Turner argues that the same evidence—his satisfaction of the job's minimum requirements and Patteson's

---

[9] *Phillips v. StellarOne Bank*, No. 7:11-cv-440, 2012 WL 3762448, at *1 (W.D. Va. July 16, 2012).

inability to meet those requirements—also calls into question the Town's explanation. But unlike in *Phillips*, here the evidence showing a potential difference in qualifications does not call into question the nondiscriminatory explanation—that is, the myriad ways in which Patteson was more viewed more successfully in the interview.

The only other alleged evidence of "pretext" is Davis's notes from the interview panel.[10] Turner argues that the notes are "positive" about him. (Pl.'s Br. 5 (setting forth Davis's notes).) To be sure, there are not overtly negative comments in those particular notes, but they do not contain positive adjectives, either. A fairer description would be "neutral." This conclusion is particularly evident when viewed side by side with Davis's notes for Patteson. The notes from Patteson's interview include a number of positive comments, consistent with Davis's deposition testimony about the two interviews. (Def.'s Reply, Ex. 2, Dkt. No. 20-2.) And Turner's own self-assessment of his interview performance is irrelevant; "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1988).

Further, other factors militate away from Turner's assertions of pretextual but-for age discrimination. First, many of the interviewers had known Turner a long time and at least some considered him a good friend. Davis, for example, said, "It [Turner's age] did not affect my decision . . . . I have been good friends with Jeff Turner for years . . . Good friends with him. I mean, we've refereed together. We've played ball together. We've played cards together. I have been around Jeff a lot throughout the years." (Davis Dep. 15.) Outgoing director Dakota Shrader stated that "I considered myself and Mr. Turner very good friends, we coach together currently so nothing to do with his age has any reason to think he would not be successful in

_____

[10] The notes of other interviewers apparently no longer existed at the time the case was filed.

something." (Shrader Dep. 24.)  Second, three of the four interviewers were themselves in the protected age class.  Third, as mentioned previously, three of the five selected to interview were in the protected class, and all but one of the five who were denied any interview were under forty.  Last, but not least in importance, each interviewer consistently asserted that Jeffrey Spicer, who was also in the protected class, was their second choice.  Other than a "knowledge and ability of [him]self," Turner made no genuine effort to compare his qualifications with Spicer's.  This fact also makes it clear that, even if Patteson had been ruled out from the position, Turner would not have been offered the position.

## IV.  CONCLUSION

Having considered the record evidence, the court concludes that no reasonable jury could find that age was the but-for cause of the Town's decision not to hire Turner.  The Town has provided a legitimate, non-discriminatory reason for selecting Patteson over Turner.  Turner's assertion that he met the minimum qualifications that Patteson lacked does not affect the validity of that reason, as the interviews occurred afterward and there is overwhelming and undisputed evidence of Turner's poor performance in the interview.  Put differently, even if the jury credited Turner on that point, it does not call into question the reason given by the Town—that Patteson greatly outperformed Turner *in the interview*.  Turner has also presented nothing to suggest that age was the reason he was not selected.   As in *Ullman*, "summary judgment should be granted to the defendant[] . . . because [it] offered 'legitimate, non-discriminatory reasons' for not hiring plaintiff against which plaintiff adduced insufficiently probative evidence of pretext."  996 F. Supp. at 562.

16

For the foregoing reasons, the court will enter an order granting the Town's motion for
summary judgment (Dkt. No. 16) and striking the case from the court's active docket.

Entered: March 6, 2025.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
Chief United States District Judge